UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JAMES WRIGHT, JR.,

Petitioner,

v.

ROBERT LEGRAND, *et al.,*

Respondents.

Case No. 3:12-cv-00286-MMD-VPC

ORDER

This represented habeas matter comes before the Court on respondents' motion to dismiss (dkt. no. 40), petitioner's motion to stay (dkt. no. 47), and a motion for an extension of time (dkt. no. 52).  Respondents seek the dismissal of a number of grounds as untimely and/or unexhausted.[1]  Petitioner opposes dismissal on these bases, relying on relation back for timeliness. Petitioner seeks a stay to return to state court to exhaust Ground 7.

I.      BACKGROUND

Petitioner James Wright, Jr. challenges his Nevada state conviction, pursuant to a jury verdict, of robbery with the use of a firearm and eluding a police officer along with his adjudication as a habitual criminal. Wright challenged the conviction on direct appeal and on state post-conviction review.

---

[1]In the reply on the motion to dismiss, respondents withdrew procedural defenses to a number of grounds. *See* dkt. no. 50, at 2-4 & 6. The Court discusses herein only the grounds as to which a procedural defense still is pursued following the reply.

II.      **TIMELINESS AND RELATION BACK**

A.      **Governing Law**

A claim in an amended petition that is filed after the expiration of the one-year limitation period will be timely only if the claim relates back to a claim in a timely-filed claim under Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the same conduct, transaction or occurrence" as the timely claim. *Mayle v. Felix*, 545 U.S. 644 (2005). In *Mayle*, the Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as prior timely claims merely because the claims all challenge the same trial, conviction or sentence. 545 U.S. at 655-64. Rather, under the construction of the rule approved in *Mayle*, Rule 15(c) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." 545 U.S. at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely.  545 U.S. at 659 & n.5.

B.      **Ground 2(a)**

In Ground 2(a), petitioner alleges that he was denied effective assistance of trial counsel when counsel failed to object to questioning that elicited testimony about his co-defendant's statements implicating petitioner. Wright alleges in particular that the state trial court reversed a ruling severing his case from co-defendant Kevin Gill's case based upon a condition that the State could not elicit any testimony during its case in chief regarding Gill's statements implicating Wright. Petitioner alleges that the State did not elicit such testimony during its case in chief but that the State cross-examined Gill as to the inculpatory statements and then called Detective Jenkins to testify to Gill's

///

statements implicating Wright. Petitioner alleges that counsel was ineffective for failing to object to this questioning as to Gill's statements.

The Court is persuaded that the claim in amended Ground 2(a) that trial counsel was ineffective for failing to object to the questioning as to Gill's statements relates back to both: (1) the substantive claim in original Ground 2 alleging prosecutorial misconduct based upon the questioning of Detective Jenkins regarding Gill's statements; and (2) the ineffective-assistance claim in original Ground 5 alleging that counsel was ineffective for failing to object to the prosecutor's alleged misconduct in eliciting testimony as to Gill's statements.

In this regard, the Court is not persuaded by the argument that the ineffective-assistance claim in amended Ground 2(a) inherently arises from operative facts different in time and type from the substantive claim in original Ground 2 because the ineffective-assistance claim is directed to defense counsel's actions whereas the substantive claim is directed to the prosecutor's actions. The apposite governing principle instead is that a claim based upon a different legal theory that is tied to the same operative facts relates back to the prior claim. *Mayle, supra.* Both amended Ground 2(a) and original Ground 2 arise from the same operative facts — questioning as to Gill's statements inculpating Wright. The point that the amended claim is based upon a legal theory of ineffective assistance of counsel and the original claim was based upon a legal theory of prosecutorial misconduct is not determinative. *See, e.g., Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1296-97 (9th Cir. 2013) (amended claim of ineffective assistance of counsel for failing to raise double jeopardy claim related back to substantive claim in original petition).

The Ninth Circuit decision in *Schneider v. McDaniel*, 674 F.3d 1144 (9th Cir.), *cert. denied*, 133 S.Ct. 579 (2012), is not to the contrary. In *Schneider*, an amended substantive claim challenging the trial court's denial of a mid-trial motion to sever did not relate back to an original ineffective-assistance claim based on trial counsel's pretrial failure to investigate the co-defendant's trial strategy. 674 F.3d at 1151. The

1    *Schneider* panel did note that the theory of the original claim was based upon counsel's

2    alleged failures — which occurred prior to trial — and that the theory of the amended

3    claim was based upon the trial court's alleged errors — which occurred after the trial

4    commenced. *Id.* However, *Schneider* made no holding that a claim of ineffective

5    assistance of counsel never can relate back to a substantive claim even where the

6    ineffective-assistance claim and the substantive claim arise from the same operative

7    facts — such as allegedly improper questioning to which counsel did not object.[2]

8         The Court further finds that amended Ground 2(a) relates back also to the

9    ineffective-assistance claim in original Ground 5. Respondents contend that the

10   operative facts in original Ground 5 did not include a failure to object to the questioning

11   of Detective Jenkins regarding Gill's statements. However, the operative facts should

12   not be parsed so narrowly in this context. The claims instead arise from operative facts

13   consisting of questioning as to Gill's statements inculpating Wright. A claim that trial

14   counsel was ineffective for failing to object to the questioning of one witness regarding

15   Gill's statements (*i.e.*, Jenkins) relates back to the original claim that counsel was

16   ineffective for failing to object to the questioning of another witness regarding the

17   statements (*i.e.*, Gill himself). *See, e.g., Valdovinos v. McGrath*, 598 F.3d 568, 574-76

18   (9th Cir. 2010), *judgment vacated on other grounds for reconsideration*, 131 S.Ct. 1042

19   (2011), *prior relevant holding adhered to in unpublished decision*, 2011 WL 996660, slip

20   op. at *722 (9th Cir., Mar. 22, 2011) (*Brady* claim and related ineffective-assistance

21   claim based upon failure to disclose additional items of exculpatory evidence related

22   back to prior claims regarding nondisclosure of other items of exculpatory evidence);

23

24       [2]The Court is not persuaded that *Ha Van Nguyen* is inconsistent with *Schneider*.
         Any such conflict in Ninth Circuit precedent in any event would not be resolved simply
25       by following the earlier case. Respondents cite *Avagyan v. Holder*, 646 F.3d 672 (9th
         Cir. 2011), for established law that a later panel is bound by a prior panel decision.
26       However, when a conflict nonetheless does arise between two prior lines of authority,
         the Ninth Circuit does not follow a rule under which the earlier line controls.  Rather, the
27       circuit conflict can be resolved only on *en banc* review. *See Antonio v. Wards Cove
         Packing Co., Inc.*, 810 F.3d 1477, 1478-79 (9th Cir. 1987) (*en banc*). There is no such
28       conflict in this instance because the cases are not inconsistent with one another.

1   *see also Rodriguez v. Adams*, 545 Fed.Appx. 620 (9th Cir. Nov. 18, 2013) (later claim

2   that counsel was ineffective for failing to investigate the testimony of two potential

3   exculpatory witnesses who were present at the scene related back to earlier claim that

4   counsel was ineffective for failing to investigate the testimony of three other witnesses

5   who also were present at the scene).

6       Amended Ground 2(a) accordingly relates back to original Ground 2 and original

7   Ground 5, whether looked at separately or instead together. Ground 2(a) therefore is

8   timely.[3]

9       **C.      Ground 6**

10      In Ground 6, petitioner alleges that he was denied effective assistance of trial

11  counsel because counsel failed to move to suppress evidence obtained from the search

12  of his car because of allegedly unreliable information contained in the search warrant.

13  Petitioner alleges in particular that counsel should have sought suppression on the

14  basis that co-defendant Kevin Gill's statement used as a basis for the search warrant

15  was unreliable because he was under the influence of drugs at the time.

16      Although the question is a closer one, the Court is persuaded that amended

17  Ground 6 relates back to original Ground 8. In original Ground 8, petitioner alleged that

18  trial counsel should have sought suppression for lack of a supporting affidavit

19  establishing the grounds for issuing the search warrant and that counsel failed to verify

20  the validity of the search warrant.[4] The amended claim relates back to the operative

21  facts of counsel's failure to verify the validity of the search warrant and to challenge

22

23      [3]Respondents expressly have withdrawn an argument made initially in the motion
    to dismiss that *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009), requires that the claim in the
24  prior pleading must have been exhausted for a later claim to be able to relate back to
    the claim. *See* dkt. no. 50, at 2, lines 10-13. The Court notes that, in contrast to *King*, no
25  claims from a prior pleading are being dismissed in this case and then later reasserted,
    which occurs when a stay is sought instead under *Kelly v. Small*, 315 F.3d 1063 (9th Cir.
26  2003). Any issue as to the application of *King* to this case in any event is abandoned
    and thus no longer is preserved in the district court in this case. The Court thus does not
27  consider the argument further.
        [4]*See* dkt. no. 6, at handwritten page numbers 55, 56 (at top of page), & 57 (at top
28  of page).

1   whether the warrant was properly factually supported. *Cf. Valdovinos, supra*; *Rodriguez,*

2   *supra.*[5]

3        Amended Ground 6 therefore relates back to original Ground 8 and is timely.

4   **D.     Ground 7**

5        In Ground 7, petitioner alleges that he was denied effective assistance of trial

6   counsel during the plea bargaining process because counsel abandoned pursuit of a

7   plea bargain that would have been more favorable to petitioner than the later trial

8   outcome. This ground relies upon the Supreme Court decision in *Lafler v. Cooper*, 132

9   S.Ct. 1376 (2012), and it follows upon petitioner's efforts to timely assert the claim *pro*

10  *se.*

11       The timeliness of this ground must be assessed against the backdrop of the early

12  procedural history in this federal action.

13       Petitioner constructively filed the original petition by mailing his papers to the

14  Clerk on or about May 24, 2012.

15       At that time, the one-year federal limitation period would not expire until October

16  11, 2012, absent other tolling or delayed accrual.[6]

17

18  _____

        [5]The Court is not as sanguine that there is relation back as argued by petitioner

19  because original Ground 8 also refers to counsel's failure to object at trial to the
    reliability of Gill's testimony as evidence of guilt at trial.

20       [6]Petitioner filed his state post-conviction petition during the pendency of his direct
    appeal. Accordingly, no time expired in the federal limitation period prior to the October

21  11, 2011, issuance of the remittitur on the state post-conviction appeal. The limitation
    period, therefore, began to run after this date and expired on the October 11, 2012, one-

22  year anniversary date of the issuance of the remittitur.
        Although the point is not critical to the analysis herein, petitioner and respondents
    both reach different expiration dates.

23       Petitioner identifies October 10, 2012, as the expiration date, by counting 365
    days after October 11, 2011, including February 29, 2012, in the leap year. It is the

24  Court's understanding that the anniversary date — rather than a 365-day count —
    instead controls in a leap year on a simple one year count. *See, e.g., United States v.*

25  *Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003); *United States v. Tawab*, 984 F.2d 1533,
    1534 (9th Cir. 1993); *Connors v. Marshall*, 2010 WL 1726882, at *2 (C.D. Cal. Feb. 1,

26  2010).
        Respondents identify October 12, 2012, as the expiration date. Putting leap

27  years to the side, if the limitation period begins running after October 11 in the first year,
    then October 12 of that year is day 1 in the count, and October 11 of the following year

28  is day 365. That is, one does not wait until October 13 of the first year to start running
    *(fn. cont...)*

On August 13, 2012, the Court issued an order that in the main directed service and a response to the *pro se* original petition. The order additionally included the following advisement to the *pro se* petitioner:

> . . . . A petition for federal habeas corpus should include all claims for relief of which petitioner is aware. If petitioner fails to include such a claim in his petition, he may be forever barred from seeking federal habeas relief upon that claim. See 28 U.S.C. §2254(b) (successive petitions). If petitioner is aware of any claim not included in his petition, he should *notify* the court of that *as soon as possible, perhaps* by means of a motion to amend his petition to add the claim.

Dkt. no. 5, at 2, lines 3-8 (emphasis added).

As the italicized emphasis reflects, the Court: (a) told petitioner only that he should "notify" the Court and only "perhaps" by a motion for leave to amend if he had additional claims; (b) told him that he should do so only "as soon as possible" without setting any particular deadline; and (c) did not indicate that he actually needed to act not merely "as soon as possible" but instead by an October 11, 2012, hard deadline — only two months away — to properly preserve claims as against the federal time-bar.

Petitioner did, in fact, notify the Court that he had another claim that he wished to pursue, the *Lafler* claim. He did so exceedingly promptly, mailing his paper for filing on September 10, 2012, less than thirty (30) days after entry of the August 13, 2012, order. And he notified the Court of the additional claim in response to the order within the federal limitation period.

However, he did not notify the Court of the additional claim specifically via a motion for leave to amend the petition.[7] He instead notified the Court of the additional claim via a motion to stay the action so that he could return to state court to exhaust a *Lafler* claim. Petitioner attached with the motion an exhibit in which he set forth his entire *Lafler* ground in the same manner as one would do in a petition. The only

_____

(...fn. cont.)
the count at day 1. The limitation period instead begins running after October 11, *i.e.*, with October 12 being the first counted expired day in the limitation period.

[7]Under Rule 15(a)(1)(A), a motion for leave would be necessary for a first amending pleading only if the amendment was sought more than 21 days after service of the prior pleading.

difference was that the three-page ground was not set forth within a document styled as a pleading.

At no time did the Court expand on the prior advisement in the August 13, 2012, order to inform the *pro se* petitioner that his September 10, 2012, motion to stay that he filed promptly in response to that order might not "notify" the Court of the claim in a manner sufficient to preserve the claim by the October 11, 2012, limitation period deadline.

On February 22, 2013, after the expiration of the federal limitation period, the Court denied the stay without prejudice and granted petitioner's motion for reconsideration of its prior denial of appointment of counsel. The order stated *inter alia*:

> On September 12, 2012, before respondents had responded to the petition in any way, petitioner filed a motion for stay and abeyance (ECF #8). He seeks a stay in this action in order that he may exhaust a claim in state court. He attaches as an exhibit an additional ground that he received ineffective assistance of counsel during plea negotiations and that but for that ineffective assistance he would have accepted the plea agreement, which carried a sentence that was substantially shorter than the sentence he received after a jury found him guilty. . . . .
>
> Respondents correctly point out in their opposition that a motion for stay and abeyance is inapposite here because the ground is not already set forth in petitioner's federal petition (ECF #11). Accordingly, petitioner's motion for stay and abeyance is denied (ECF #8). As will be discussed below, counsel shall be appointed in this case, and thereafter, counsel for petitioner shall file an amended petition. The amended petition shall set forth all grounds for relief.

Dkt. no. 27, at 1-2.

On the pending motion to dismiss, respondents contend that amended Ground 7 in the counseled first amended petition cannot relate back to the fully-articulated *Lafler* ground submitted with the *pro se* stay motion because it was not contained within a formal pleading.

The Court is not persuaded. Even putting the August 13, 2012, order to one side, courts must liberally construe the substance of *pro se* filings, regardless of their form or

///

///

8

title.[8] Respondents are correct that a *pro se* litigant must comply with all applicable procedural rules, after being notified of and being given an opportunity to correct the deficiency. That does not mean, however, that a *pro se* litigant who timely files a viable claim for relief in a procedurally defective manner must suffer a limitations-based dismissal. Such a draconian approach has been rejected in other contexts even with regard to counseled filings. *Cf.* Fed. R. Civ. Pro. 5(d)(4) (the rule bars a clerk from refusing to file a paper in defective form, with the 1991 advisory committee notes reflecting that the rule was adopted to eliminate limitations-based dismissals where papers were timely but defective); *see also* Fed. R. Civ. Pro 15(c)(1)(B) (referring to a claim "set out — or attempted to be set out — in the original pleading"). Thus, the Court certainly would have been able to direct petitioner to amend to file a procedurally compliant pleading. However, it still must construe the *pro se* paper that he did file liberally as a prior partial pleading for purposes of relation back under Rule 15(c).

This conclusion follows with even greater force when the Court's August 13, 2012, order also is taken into consideration. The *pro se* petitioner presented the claim in a manner that was permitted by the order. The Court told petitioner only that he need "notify" the Court if he had additional claims and only that he "perhaps" needed to present the claims in an amended pleading. The Court further told him that he needed to do so only "as soon as possible." The order — after raising the matter of time in this fashion — did not then fully inform petitioner that a failure to "notify" the Court of the claims instead in a formal pleading specifically by the impending limitation period

---

[8] *See, e.g., Andrews v. United States*, 373 U.S. 334, 338 (1963) (*pro se* motion filed in a federal criminal case was construed instead as a § 2255 proceeding, applying the principle that "'adjudication upon the underlying merits of claims [should not be] hampered by reliance upon the titles petitioners put upon their documents'"); *Butler v. Long*, ___ F.3d ___, 2014 WL 1717009, at *2 (9th Cir. May 02, 2014); *Woods v. Carey*, 525 F.3d 886, 889-90 (9th Cir. 2008) (a habeas petition filed in new action while a first petition still is pending must be treated as a motion to file an amended petition in the first action, rather than applying a successive petition bar); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 698-99 (9th Cir. 1988), *overruled on other grounds, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (*pro se* litigant did not waive her appeal by failing to follow the formal brief-writing requirements).

1    expiration date risked imminent forfeiture of the claims. The only risk of claim forfeiture

2    identified in the order was that arising from the application of successive-petition rules to

3    a later federal petition.

4         Petitioner promptly responded to the order, and he notified the Court of the

5    additional ground in a manner that was not precluded by the nonspecific language of

6    the order. He presented a fully articulated ground in the same manner as in a pleading

7    save only for the fact that the ground was not set forth in a paper titled as a pleading.

8    He further did so within the federal limitation period. In such circumstances, the Court

9    cannot hold the *pro se* petitioner to adverse limitation consequences after he responded

10   to a court order in a fashion that was not precluded by the order.[9]

11        Ground 7 therefore relates back to the prior *pro se* ground submitted with the

12   motion to stay within the limitation period, such that the amended ground is timely.

13   ///

14   ///

15   _____

16   [9]A federal court clearly is not required to provide advisements to *pro se*
     petitioners as to procedure. *See, e.g., Pliler v. Ford*, 542 U.S. 225, 231-32 (2004). If an
17   original petition is sufficient and does not require amendment prior to service for a
     response, there is no requirement that a court advise a petitioner that he should assert
18   all available claims. When advisements are given, however, they then "run the risk of
     being misleading themselves." 542 U.S. at 232. In such circumstances, a court cannot
19   hold a *pro se* petitioner to adverse consequences sustained in following an advisement
     that – albeit unintentionally – affirmatively misled the petitioner. *E.g., Ford*, 542 U.S. at
20   233 & 234; *see also Sossa v. Diaz*, 729 F.3d 1225, 1231-35 (9th Cir. 2013) (the court
     affirmatively misled the *pro se* petitioner by granting without qualification a requested
21   extension that exceeded the remaining limitation period). Advisements of course can be
     as misleading by what they omit from the advisement, once undertaken, as by what
22   they explicitly state.
         The Court has no occasion to consider here the potential ramifications where a
23   petitioner proceeds in this fashion after an intervening expiration of the limitation period
     following upon an order with similar language. It suffices for the present case to hold
24   that the claim in the counseled amended petition relates back to the timely-filed *pro se*
     claim, notwithstanding the fact that the claim was presented as an exhibit to a motion to
25   stay, particularly given the nonspecific language used in the August 13, 2012,
     advisements given in this case.
26        Nothing in the February 22, 2013, order denying the motion to stay requires that
     the Court rule to the contrary on the present motion due to law of the case. First, the
27   Court did not address relation back consequences in the order. Second, law of the case
     does not apply to an interlocutory order by a district court on a point that has not been
28   affirmed on an intervening appeal in the case. *See, e.g., City of Los Angeles, Harbor
     Division v. Santa Monica Baykeeper*, 254 F.3d 882, 888-89 (9th Cir. 2001).

III.   **EXHAUSTION**

A.   **Governing Law**

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest court available, in this case the Supreme Court of Nevada. *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim. *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement ensures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Under *Rose v. Lundy*, 455 U.S. 509 (1982), a mixed petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

B.   **Discussion**

The same exhaustion issue is presented as to Grounds 2, 4 and 6. There is no dispute that Ground 7 is unexhausted, with petitioner seeking a stay to exhaust the claim.

The sole exhaustion issue presented is whether the claims in Grounds 2, 4 and 6 were fairly presented to the Supreme Court of Nevada on the state post-conviction appeal.

///

On the appeal, petitioner provided no argument specific to the merits of these claims in the appellant's brief. He instead argued that the state district court's order dismissing "most of the issues raised in the petition" without an evidentiary hearing was an abuse of discretion and violated his due process rights. The only brief discussion of the merits under the issue was directed to one claim, a claim other than the claims in federal Grounds 2, 4 and 6.[10]

In its order of affirmance, the Supreme Court of Nevada rejected on the merits the one claim as to which petitioner had specifically discussed the merits under the evidentiary-hearing issue. The court held that the state district court had not erred in denying the claim without considering it at the evidentiary hearing.[11]

The state supreme court then stated the following in a footnote to the foregoing holding as to the one claim:

> To the extent that appellant argues that the district court erred in declining to consider at an evidentiary hearing any of the additional claims raised below, appellant fails to provide cogent argument as to how or why the district court erred in denying these claims. "It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court." *Maresca v. State,* 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

Dkt. no. 18, Ex. 130, at 3 n.1.

The Court holds that petitioner did not fairly present the claims in federal Grounds 2, 4 and 6 to the Supreme Court of Nevada on the state post-conviction appeal. In contrast to the one claim as to which petitioner provided specific argument on the evidentiary-hearing issue, the state supreme court clearly did not address the remaining vaguely-referenced "most of the issues raised in the petition." It did not do so because petitioner failed to provide cogent argument on any of the claims. It is established law that presenting a claim in a procedural context in which the merits of the claim will not be considered, or will be considered only in special circumstances, does not constitute fair presentation of the claim. *See, e.g., Castille v. Peoples,* 489 U.S. 346,

---

[10]*See* dkt. no. 18, Ex. 128, at 12-13.
[11]Dkt. no. 18, Ex. 130, at 2-3.

351(1989); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Appellate courts as a rule generally review only claims and issues argued specifically in the briefing, and a bare and conclusory assertion of a claim or issue does not preserve the claim or issue for appellate review. *See, e.g., Farmer v. McDaniel*, 666 F.3d 1228, 1233 n.5 (9th Cir. 2012); *Nevada Department of Corrections v. Greene*, 648 F.3d 1014, 1020 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1823 (2012). In the present case, the Supreme Court of Nevada clearly did not review the merits of any claims on petitioner's bare assertion of a multitude of claims in a blanket conclusory fashion, nor was it required to do so.

Grounds 2, 4 and 6 therefore are unexhausted.

## IV.   MOTION TO STAY

Petitioner seeks a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), to exhaust the *Lafler* claim of ineffective assistance of trial counsel in Ground 7.[12]

To obtain a *Rhines* stay in order to return to the state courts to exhaust a claim, a petitioner must demonstrate that there was good cause for the failure to exhaust the claim, that the unexhausted claim is not plainly meritless, and that the petitioner has not engaged in intentionally dilatory litigation tactics. *See* 544 U.S. at 278.

///

///

---

[12]The Court is not persuaded that the motion to stay should be rejected at this point as premature or improperly filed. There is no rule that a stay may not be sought prior to a ruling on exhaustion issues in a motion to dismiss where, as here, there is no question as to whether a ground is unexhausted. The Court often appoints counsel in circumstances where it is understood that a motion for a stay likely will be filed with the counseled amended petition before any motion to dismiss is filed. The circumstances of when various issues are raised and/or decided in a particular case necessarily vary with the underlying situation presented in each case.

As to filing, the better practice would have been for counsel to file the opposition to the motion to dismiss and the motion to stay as separate documents. Petitioner, however, did present a motion to stay separately in the document, which then was docketed as two separate filings. The prior *Greene* and *Volpicelli* unpublished orders from this District referenced in the briefing disapproved of the assertion of a stay request embedded within an opposition to a motion to dismiss rather than as a filed and separately-briefed motion. Petitioner did not simply embed a stay request within an opposition memorandum here. With respect to the timing of the stay request, the *Volpicelli* order spoke to the more typical circumstance in which lack of exhaustion was not conceded as to any claim.

A.    **Good Cause**

As the Ninth Circuit recently emphasized in *Blake v. Baker*, 745 F.3d 977 (9th Cir. 2014), the contours of what constitutes "good cause" under *Rhines* are not fully developed:

> There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust. In *Rhines*, the Supreme Court did not explain the standard with precision. *See* 544 U.S. at 275-78, 125 S.Ct. 1528. The Court has since addressed the meaning of good cause in only one other case, recognizing in dicta that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" to excuse his failure to exhaust. *Pace v. DiGuglielmo*, 544 U.S. 408, 416, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (citing *Rhines*, 544 U.S. at 278, 125 S.Ct. 1528).
>
> Similarly, our cases on the meaning of good cause under *Rhines* are also sparse. In *Jackson v. Roe*, 425 F.3d 654 (9th Cir.2005), we held that good cause does not require a showing of "extraordinary circumstances." *Id.* at 661-62. In *Wooten v. Kirkland*, 540 F.3d 1019 (9th Cir. 2008), we held that a petitioner did not establish good cause simply by alleging that he was "under the impression" that his claim was exhausted. *Id.* at 1024. We explained that accepting as good cause the mere "lack of knowledge" that a claim was exhausted "would render stay-and-abey orders routine" because "virtually every habeas petitioner" represented by counsel could assert that he was unaware of his attorney's failure to exhaust. *Id.*

745 F.3d at 980-81; *see also id.*, at 981-82 (clarifying *Wooten*).

*Blake* establishes, however, that the good cause required under *Rhines* cannot be more demanding than the showing of cause required under the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012):

> Our holding, that IAC by post-conviction counsel can be good cause for a *Rhines* stay, is consistent with and supported by the Supreme Court's recent opinion in *Martinez v. Ryan*, —— U.S. ——, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), in which it established a limited exception to the rule of *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), that IAC by state post-conviction counsel "at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at 1315. We believe that good cause under *Rhines*, when based on IAC, cannot be *any more* demanding than a showing of cause under *Martinez* to excuse state procedural default.[FN7] Unlike a successful showing of cause under *Coleman* and *Martinez*, an IAC-based showing of good cause under *Rhines* only permits a petitioner to return to state court — not bypass the state court as would be the case under *Coleman* — to exhaust his unexhausted claims. Because a *Rhines* stay and abeyance does not undercut the interests of comity and federalism embedded in our habeas jurisprudence, a *Rhines* petitioner arguing IAC-based good cause is not

14

required to make *any stronger* a showing of cause than a *Coleman/Martinez* petitioner. *Id.* at 1318 (stating that "cause" is established when a petitioner's post-conviction counsel is "ineffective under the standards of *Strickland*"); *see also Detrich v. Ryan*, 740 F.3d 1237, 1243-45 (9th Cir.2013) *(en banc)* (plurality opinion) (discussing the showing of "cause" required under *Martinez* and *Trevino v. Thaler*, —— U.S. ——, 133 S.Ct. 1911, 1918, 185 L.Ed.2d 1044 (2013)).

> [FN7] Because *Blake* meets the *Coleman* showing of cause, *we leave for another day whether some lesser showing will suffice to show good cause under Rhines*. The Supreme Court's statement in *Pace*, 544 U.S. at 416, 125 S.Ct. 1807, however, that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" under *Rhines*, suggests that this standard is, indeed, *lesser* than the cause standard discussed in *Coleman* and applied in *Martinez*.

745 F.3d at 983-84 & n.7 (emphasis added).

Respondents contend that petitioner cannot establish good cause under *Blake* because he cannot demonstrate that post-conviction counsel provided ineffective assistance. Respondents contend that the claim of ineffective assistance of trial counsel in Ground 7 is without merit based on the evidence in the state court record. They maintain that post-conviction counsel therefore was not ineffective for failing to raise the claim.[13]

The Court is not persuaded based upon the factual arguments made by respondents.

First, petitioner's statements rejecting a prior proposed plea bargain in his case do not necessarily belie his claim that he later was willing to accept a proposed plea bargain allegedly being discussed on October 14, 2005. Substitute defense counsel's statements on the record that day — with Wright present — support Wright's claim that he then was willing to accept the proposed plea bargain:

> Brad Van Ry on behalf of Mr. Wright. I've had a conversation with my client today. He indicates a willingness to enter into a guilty plea which

---

[13]The claim was not foreclosed in either the Ninth Circuit or the Supreme Court of Nevada at the time that counsel was litigating the petition in the state district court. Both courts had held that a petitioner could demonstrate ineffective assistance of trial counsel in connection with the rejection of a plea bargain. *See, e.g., Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003); *Larson v. State*, 104 Nev. 691, 766 P.2d 261 (1988).

1     has been offered by the State. However, [Deputy District Attorney] Mr.
2     Sattler is unwilling to proceed in this case right now and he's not sure if a
    package deal is a contingency of the guilty plea. We ask that this case be
3     set for about two weeks from now for a change of plea as to Mr. Wright.

4 Dkt. no. 19, Ex. 27 at 2. *See also* dkt. no. 39, Ex. 144, ¶5 (November 25, 2013,

5 declaration by Wright).

6        Second, Wright's December 19, 2005, dated proper person motion to dismiss

7 counsel and appoint new counsel[14] does not necessarily establish, as respondents'

8 suggest, that Wright "intended to proceed to trial" rather than accept a plea bargain.

9 Prior to that motion, trial counsel had appeared on November 4, 2005, and stated on the

10 record — without Wright being present — that there was no plea deal on the table:

11     Your Honor, at this time, we were prepared to simply reset the case
    for trial. My brother was here in my place the last time and there was a
12     misunderstanding. We had thought there were negotiations, but there's
    not, and so we'd ask the Court to reset this case for trial as to both
13     defendants.

14 Dkt. no. 19, Ex. 28, at 3. Wright asserts that counsel did not advise him prior to the

15 November 4, 2005, status hearing that plea negotiations had been terminated and that

16 the case was going to be reset for trial.[15] Respondents rely on the following statement

17 by Wright in the December 19, 2004, dated motion: "The Defendant cannot safely go to

18 trial upon a realistic recognition of the obvious truth; that the defendant does not have

19 the professional legal skill to protect himself."[16] The Court is not sanguine that a

20 defendant's statement that he wants a new attorney because neither current counsel

21 nor the defendant can adequately defend him at trial reflects a willingness and

22 readiness to go to trial rather than accept a plea deal. Petitioner alleges in Ground 7

23 that defense counsel unilaterally abandoned plea discussions. His proper person

24 entreaty for new counsel does not necessarily support an inference that he was

25 ///

26

27     [14]Dkt. no. 19, Ex. 30.
    [15]Dkt. no. 39, Ex. 144, ¶6.
28     [16]*See* dkt. no. 51, at 5, quoting dkt. no. 19, Ex. 30, at 2.

1   unwilling to enter a plea with competent counsel pursuing both a possible favorable plea

2   deal as well as preparing a vigorous defense in the event of a trial.

3         The Court emphasizes the preliminary nature of the procedural question

4   presented on a motion to stay. The district court is determining only the preliminary

5   procedural issue of whether the federal action should be stayed while the petitioner

6   pursues further exhaustion in the state courts. *Cf. Blake*, 745 F.3d at 984 (satisfaction of

7   the *Rhines* good-cause standard "only permits a petitioner to return to state court . . . to

8   exhaust his unexhausted claims" and thus does not require a stronger showing than

9   that required to establish cause under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), to

10  overcome a procedural default). The Court thus, clearly, is not going to definitively

11  resolve the claim in Ground 7 as a prerequisite to determining whether to enter a stay to

12  afford the state courts an opportunity to consider the claim in the first instance. *Cf.*

13  *Gonzalez v. Wong*, 667 F.3d 965, 979-80 (9th Cir. 2011), *cert. denied*, 133 S.Ct. 155

14  (2012) (noting that, in the circumstances presented, a stay was appropriate because it

15  provided the state courts with the first opportunity to resolve a *Brady* claim based upon

16  evidence developed on federal habeas review). Rather, it suffices for the present good-

17  cause inquiry that petitioner has presented a colorable or potentially meritorious claim

18  that state post-conviction counsel was ineffective for failing to pursue a colorable or

19  potentially meritorious claim of ineffective assistance of trial counsel. *Cf. id.* (good cause

20  established where the petitioner presented a colorable or potentially meritorious *Brady*

21  claim).

22        The Court accordingly finds that petitioner has demonstrated good cause under

23  *Rhines* and *Blake* for the prior failure to exhaust the claim in Ground 7, with regard to

24  the preliminary procedural question presented on the motion to stay. The State, of

25  course, can pursue its arguments contesting the merits of the claim during the

26  exhaustion of the claim in the state courts. The Court neither makes a holding on nor

27  implies a view of the merits of the claim.

28  ///

### B.    Not Plainly Meritless

When the *Rhines* Court discussed the issue of whether a petitioner has presented a claim that is not plainly meritless, the Court made a comparison cite to 28 U.S.C. § 2254(b)(2) concerning this inquiry. 544 U.S. at 277. The Ninth Circuit has held that a district court may reject an unexhausted claim on the merits pursuant to § 2254(b)(2) "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

The Court finds that Ground 7 raises at least a colorable federal claim. The Court rejects respondents' argument that it should find the claim "meritless" because it allegedly is procedurally defaulted. At the outset, "meritless" does not mean "procedurally barred." Moreover, in line with the preceding discussion, the Court declines the invitation to conduct a conclusive procedural default inquiry, which potentially might require an evidentiary hearing, on a preliminary procedural issue of whether a stay should be entered. Here, such an inquiry potentially could entail a fact-intensive examination of whether petitioner can demonstrate prejudice from trial counsel's alleged unilateral abandonment of plea discussions. Such an inquiry is not contemplated under a standard seeking to determine only whether "it is perfectly clear that the applicant does not raise even a colorable federal claim."

As the Court has observed in other contexts, the cause-and-prejudice and other standards applied to overcome a procedural bar are substantially the same in Nevada state court and federal court.[17] The state courts should be afforded the first opportunity

---

[17]Under state practice, "[a] petitioner can overcome the bar to an untimely or successive petition by showing good cause and prejudice." *E.g., Mitchell v. State*, 149 P.3d 33, 36 (Nev. 2006). In *Robinson v. Ignacio*, 360 F.3d 1044 (9th Cir. 2004), the court of appeals recognized that "Nevada's 'cause and prejudice' analysis and the federal 'cause and prejudice analysis' are nearly identical, as both require 'cause for the default and actual prejudice as a result.'" 360 F.3d at 1052 n.3. Moreover, the Nevada state courts also recognize the same exception for a fundamental miscarriage of justice, such that "[e]ven when a petitioner cannot show good cause sufficient to overcome the bars to an untimely or successive petition, habeas relief may still be granted if the petitioner can demonstrate that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Mitchell*, 149 P.3d at 36 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

1   to possibly apply state procedural bars or potentially consider the merits of the

2   constitutional claim. *Cf. Blake*, 745 F.3d at 984 (a *Rhines* stay furthers rather than

3   undercuts the interests of comity and federalism embedded in habeas jurisprudence);

4   *Gonzalez, supra*.

5         **C.    No Intentionally Dilatory Tactics**

6         Nothing in the record before the Court reflects that petitioner has engaged in

7   intentionally dilatory tactics. While it perhaps is not inconceivable that a noncapital

8   habeas petitioner might engage in intentionally dilatory tactics, the relevance of this

9   factor, as a practical matter, largely is restricted to capital cases.[18]

10         Respondents urge that petitioner engaged in intentionally dilatory tactics

11   because: (a) nothing prevented petitioner from raising the claim in his proper person

12   original state or federal petitions; (b) petitioner was under constructive notice from

13   *Duncan v. Walker*, 533 U.S. 167(2001), that the filing of a federal petition does not toll

14   the running of the federal limitation period as to the later assertion of claims; (c)

15   petitioner nonetheless made no effort to exhaust the claim; and (d) given "that the

16   rationale behind *Rhines* is to somewhat soften the effects of *Duncan*, granting a stay in

17   this action would undermine the rationale of *Rhines* because Wright has made no effort

18   himself to mitigate the effects of *Duncan*."[19]

19         Respondents thus essentially argue that a petitioner engages in intentionally

20   dilatory tactics when the petitioner fails to raise a claim *pro se* that his state post-

21   conviction counsel did not raise. Denying a stay on such a basis would stand not only

22   *Rhines* but also *Martinez* and *Blake* on their head. A petitioner demonstrates cause

23   _____

24   [18]*Cf. Lawrence v. Florida*, 549 U.S. 327, 344 & n. 9 (2007) (Ginsburg, J.,
     dissenting) ("Most prisoners want to be released from custody as soon as possible, not

25   to prolong their incarceration. They are therefore interested in the expeditious resolution
     of their claims. . . . . Though capital petitioners may be aided by delay, they are a small

26   minority of all petitioners."); *Valdovinos v. McGrath*, 598 F.3d 568, 574 (9th Cir. 2010),
     *vacated for reconsideration on other grounds*, 131 S.Ct. 1042 (Jan. 24, 2011)(petitioner

27   "had not engaged in dilatory tactics and he had no motivation for delay, as he is not a
     capital defendant").

28   [19]Dkt. no. 51, at 6-7.

under *Martinez*, and hence good cause under *Blake*, if he failed to exhaust a claim of ineffective assistance of counsel due to an absence of effective assistance of counsel in the state post-conviction proceedings. Under *Martinez*, such an absence of effective assistance of post-conviction counsel can occur *either* because post-conviction counsel was ineffective *or*, obviously, because a *pro se* petitioner had no post-conviction counsel at the relevant time.[20] It simply would be an absurd holding for a court to find that a petitioner had demonstrated good cause for the failure to exhaust a claim under *Rhines, Martinez,* and *Blake* and to then find that the petitioner had engaged in intentionally dilatory tactics on the premise that nothing prevented the petitioner from raising the unexhausted claim previously *pro se. Denial* of a stay on that basis not only would undermine the rationale of *Rhines*, it would render the decision in large part dead letter.

In prior cases, this Court repeatedly has rejected respondents' argument that would seek to require that petitioners — notwithstanding contrary Ninth Circuit authority — satisfy the extraordinary circumstances standard required for equitable tolling in order to establish good cause for a stay.[21] Respondents essentially seek to pursue the same rejected argument now instead under the second *Rhines* factor. Respondents now argue under this factor that a petitioner must show that something stood in his way and prevented him from pursuing the claim previously *pro se* in order to establish that he was not intentionally dilatory. The argument is no more persuasive in this context.

The Court, accordingly, finds on the record and arguments presented that petitioner has not engaged in intentionally dilatory tactics.[22] Petitioner's request for a

---

[20]*See Martinez*, 132 S.Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, *there was no counsel* or counsel in that proceeding was ineffective.") (emphasis added).

[21]*See, e.g., Lewis v. Legrand*, Case No. 2:10-cv-1225-PMP-CWH, dkt. no. 76, at 4-6 (D. Nev. June 2, 2014).

[22]The Court additionally notes — with respect to the focus on the limitation period in this argument — that the *pro se* petitioner did in fact assert the claim within the limitation period in federal court. *See* the text, *supra*, at 6-10.

1    stay therefore will be granted, following upon the satisfaction of the *Rhines* criteria.

2        **D.    Remaining Matters**

3        Respondents request in the alternative that if the Court grants the motion for a

4    stay that it instruct petitioner under *Slack v. McDaniel*, 529 U.S. 473 (2000), that the

5    failure to exhaust all of his claims before returning to federal court will be grounds for

6    dismissal with prejudice for failure to comply with a court order.

7        The language in *Slack* upon which respondents rely is found within the following

8    discussion by the Supreme Court:

9            . . . . [We hold that a] petition filed after a mixed petition has been
            dismissed under *Rose v. Lundy* before the district court adjudicated any
10           claims is to be treated as "any other first petition" and is not a second or
            successive petition.
11                                    . . . . .

12           The State complains that this rule is unfair. The filing of a mixed
            petition in federal court requires it to appear and to plead failure to
13          exhaust. The petition is then dismissed without prejudice, allowing the
            prisoner to make a return trip through the state courts to exhaust new
14          claims. The State expresses concern that, upon exhaustion, the prisoner
            would return to federal court but again file a mixed petition, causing the
15          process to repeat itself. In this manner, the State contends, a vexatious
            litigant could inject undue delay into the collateral review process. To the
16          extent the tactic would become a problem, however, it can be countered
            without upsetting the established meaning of a second or successive
17          petition.

18           First, the State remains free to impose proper procedural bars to
            restrict repeated returns to state court for postconviction proceedings.
19          Second, provisions of AEDPA may bear upon the question in cases to
            which the Act applies. AEDPA itself demonstrates that Congress may
20          address matters relating to exhaustion and mixed petitions through means
            other than rules governing "second or successive" petitions. *E.g.*, 28
21          U.S.C. § 2254(b)(2) (1994 ed., Supp. III). Third, the Federal Rules of Civil
            Procedure, applicable as a general matter to habeas cases, vest the
22          federal courts with due flexibility to prevent vexatious litigation. As *Slack*
            concedes, in the habeas corpus context it would be appropriate for an
23          order dismissing a mixed petition to instruct an applicant that upon his
            return to federal court he is to bring only exhausted claims. *See* Fed.
24          Rules Civ. Proc. 41(a) and (b). Once the petitioner is made aware of the
            exhaustion requirement, no reason exists for him not to exhaust all
25          potential claims before returning to federal court. The failure to comply
            with an order of the court is grounds for dismissal with prejudice. Fed.
26          Rule Civ. Proc. 41(b). In this case, however, the initial petition was
            dismissed without condition and without prejudice. We reject the State's
27          argument that refusing to give a new meaning to the established term
            "second or successive" opens the door to the abuses described.

28   529 U.S. at 487-89.

1     *Slack* was decided only a relatively short time after the adoption of AEDPA and

2   the above discussion was directed to a decidedly pre-AEDPA procedural concern — a

3   prospect of unrestricted filing of mixed petitions in multiple serial federal actions. The

4   intervening holding in *Duncan, supra,* that a prior federal petition does not toll the

5   federal limitation period as to later filings largely eliminates the prospect that a petitioner

6   will be able to keep coming back to federal court with serial mixed petitions.[23] In this

7   Court, such an untimely petition following the dismissal of a prior mixed petition likely

8   would be met with a show-cause order prior to service — assuming that a petitioner

9   would opt for a full dismissal of a mixed petition post-AEDPA given the limitation period

10   concerns. Under the intervening post-*Slack* law, a petitioner instead generally must

11   obtain a stay in order to be able to stop the federal proceedings, return to state court,

12   and then reinitiate federal proceedings. If he does not obtain a stay, he generally faces

13   a choice of either a complete dismissal leading to a time-bar dismissal on his return to

14   federal court or a partial dismissal of the unexhausted claims with the federal action

15   then proceeding forward immediately. Under the stay procedure, the district court — not

16   the petitioner — has direct control over whether a petitioner can successfully stop and

17   restart the federal proceedings to present serial mixed pleadings.

18     Against that backdrop, the Court sees no need to make — or justification for

19   making — an advisory pronouncement regarding possible future unexhausted claims.

20   Obviously, a petitioner in most circumstances would have a steeper hill to climb to

21   establish good cause for a second stay request and/or to pursue unexhausted claims.

22   However, any number of situations may arise between two requests for relief that

23   conceivably might provide such cause. Prudence counsels in favor of ruling on just one

24   request for relief at a time.  Meanwhile, as the *Slack* opinion suggests, a federal district

25   ///

26

---

27     [23]The later decision in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), that an
   untimely or otherwise not properly filed state petition also does not toll the limitation
28   period makes the prospect of such serial filings even less likely.

1    court has a number of means at its disposal to address the situation of a vexatious

2    noncapital habeas filer, if and as such a circumstance is presented.

3         The Court accordingly declines to give the requested instruction that the action

4    will be dismissed with prejudice if petitioner returns to federal court with unexhausted

5    claims.

6         The Court otherwise expresses no opinion as to whether petitioner might be able

7    to satisfy the requirements for a stay as to the other unexhausted grounds. Petitioner

8    need satisfy the *Rhines* criteria only as to one ground, and the Court's inquiry extends

9    only to whether a stay should be entered. It does not conduct a claim-by-claim

10   assessment as to whether the *Rhines* criteria are satisfied if it determines that a stay is

11   warranted as to at least one ground. The Court thus only is entering a stay. It is not

12   granting permission to pursue specific claims and/or directing petitioner to pursue

13   specific claims. Petitioner instead determines what claims are pursued during the stay

14   over and above the claim that serves as the predicate for a stay. The Court therefore

15   expresses no opinion as to whether petitioner also might be able to establish a basis for

16   a stay independently as to the remaining unexhausted claims. As to those particular

17   claims, if the claims remain unexhausted after the stay, they will have to be dismissed

18   prior to the action proceeding forward. *Rose, supra.*

19        Finally, the Court expresses no conclusive opinion by this order as to whether the

20   circumstances presented satisfy the cause-and-prejudice standard with respect to any

21   claim of procedural default. The holding herein should not be read as an express or

22   implied holding on that issue or any other issue, including as to the merits. The Court

23   holds here only that the criteria for a stay under *Rhines* have been satisfied, and its

24   holding in this order is expressly limited to that specific context.[24]

25   ///

26   ///

27   _____

[24]The Court further makes no implied finding that petitioner was required to wait
28   on the ruling on the pending motions prior to seeking further relief in the state courts.

23

## V.    CONCLUSION

It is therefore ordered that the motion to dismiss (dkt. no. 40) is granted in part and denied in part, such that the Court holds that Grounds 2, 4, 6 and 7 are unexhausted.

It is further ordered that petitioner's motion to stay (dkt. no. 47) is granted and that this action is stayed pending exhaustion of Ground 7. Petitioner may move to reopen the matter following exhaustion of the claim, and any party otherwise may move to reopen the matter at any time and seek any relief appropriate under the circumstances.

It is further ordered that the grant of a stay is conditioned upon petitioner commencing a collateral review proceeding in the state district court within forty-five (45) days of this order and returning to federal court with a motion to reopen within forty-five (45) days of issuance of the remittitur by the Supreme Court of Nevada at the conclusion of all state court proceedings.[25]

It is further ordered that, with any motion to reopen filed following completion of all state court proceedings pursued, petitioner: (a) shall attach an indexed chronological set of exhibits (with the corresponding CM/ECF attachments identified by exhibit number(s) on the docketing system) containing the state court record materials relevant to the issues herein that cover the period between the state court record exhibits on file in this matter and the motion; and (b) if petitioner then intends to further amend the petition, shall file a motion for leave to amend along with the proposed verified amended petition or a motion for extension of time to move for leave.[26] Respondents shall have thirty (30) days to file a response to the motion(s) filed. The reopened matter will proceed under the current docket number.

---

[25]If *certiorari* review will be sought or thereafter is being sought, either party may move to reinstate the stay for the duration of any such proceedings. *Cf. Lawrence v. Florida*, 549 U.S. 327, 335 (2007).

[26]No claims are dismissed by this order. Nothing in this order limits the claims that petitioner may assert in the state courts during the stay, subject to applicable defenses.

1    It is further ordered that any further hard copies of exhibits shall be sent — for any
2    further proceedings in this case — to the Clerk's Office in Reno. Counsel need not
3    resend any copies sent previously instead to Las Vegas.

4    It is further ordered that petitioner's motion for an enlargement of time (dkt. no.
5    52) is granted *nunc pro tunc* in connection with the reply filed on May 8, 2014. Dkt. no.
6    54.

7    It is further ordered that the Clerk of Court shall administratively close this action
8    until such time as the Court grants a motion to reopen the matter.

9    DATED THIS 9th day of June 2014.

10

11

12    MIRANDA M. DU
       UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28