1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JAMES WRIGHT, JR.,

                    Petitioner,

     v.

ROBERT LEGRAND, et al.,

                   Respondents.

Case No. 3:12-cv-00286-MMD-VPC

ORDER

14      This counseled habeas matter under 28 U.S.C. § 2254 is before the court on

15  respondents' motion to dismiss several grounds in petitioner James Wright's first-

16  amended petition (ECF No. 61). Wright opposed (ECF No. 64), and respondents replied

17  (ECF No. 65).

18  **I.      PROCEDURAL HISTORY AND BACKGROUND**

19      On January 24, 2006, a jury convicted Wright of count 1: robbery and count 2:

20  eluding a police officer (Exh. 41).[1] The state district court adjudicated Wright a habitual

21  criminal and sentenced him to a term of life without the possibility of parole for count 1,

22  with a concurrent term of 28 to 72 months for count 2. (Exh. 43.) Judgment of conviction

23  was entered on March 3, 2006. (Exh. 44.) Wright filed a notice of appeal. (Exh. 45.)

24      On April 19, 2006, Wright filed a proper person state habeas petition, but moved

25  to voluntarily dismiss the same without prejudice as premature. (Exhs. 54, 84.) The

26
27
28

[1] Exhibits 1-131 referenced in this order are exhibits to respondents' first motion to dismiss, ECF No. 13, and are found at ECF Nos. 14-19. Exhibits 132-152 are exhibits to petitioner's first-amended petition, ECF No. 38, and are found at ECF Nos. 39, 46, 53, and 58.

state district court denied Wright's motion and ordered the state habeas petition stayed pending resolution of his direct appeal. (Exh. 86.) On July 10, 2008, the Nevada Supreme Court affirmed the convictions, and remittitur issued on August 5, 2008. (Exhs. 87, 88.)

Wright filed a proper person amended state habeas petition on October 10, 2008, and a counseled supplemental petition on January 21, 2009. (Exhs. 92, 94.) On April 17, 2009, the state district court issued an order dismissing several of the claims from the petition and ordering an evidentiary hearing on others. (Exh. 103.)  The court held the evidentiary hearing on March 3, 2010. (Exh. 109.) On September 15, 2010, the court filed a written order adopting the April 17, 2009, order and denying the remaining grounds of the petition. (Exh. 14.) The Nevada Supreme Court affirmed the denial of the petition on September 14, 2011, and remittitur issued on October 11, 2011. (Exh. 129, 131.)

On May 24, 2012, Wright dispatched his federal habeas petition for filing (ECF No. 6). Ultimately, this Court appointed counsel, and respondents filed a motion to dismiss Wright's counseled first-amended petition (ECF No. 40). This Court granted in part and denied in part the motion and concluded that grounds 2, 4, 6 and 7 were unexhausted (ECF No. 55). The Court granted Wright's motion for stay and abeyance. *Id.*

Wright filed a second state habeas petition and raised the federal grounds 2, 4, 6 and 7. (Exh. 147.) On April 14, 2015, the Nevada Supreme Court affirmed the dismissal of the petition as untimely pursuant to NRS § 34.726 and successive and an abuse of the writ pursuant to NRS § 34.810(1) and (2). (Exh. 151.)  The state supreme court held that Wright failed to demonstrate good cause or prejudice to overcome the procedural bars. *Id.* Remittitur issued on May 11, 2015. (Exh. 152.)

This Court granted Wright's motion to reopen his federal habeas proceedings, and respondents now move to dismiss grounds 2, 4, 6 and 7 as procedurally barred (ECF Nos. 60, 61).

## II.   PROCEDURAL DEFAULT

Generally, "a state prisoner's failure to comply with the state's procedural requirements in presenting his claims bar him or her from obtaining a writ of habeas corpus in federal court under the adequate and independent state ground doctrine." *Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir.2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). The *Coleman* Court stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). The procedural default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases. *See Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir.2003).

For the procedural default doctrine to apply, "a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.1994). *See also Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir.1996).

## III.   INSTANT PETITION

Respondents argue that grounds 2, 4, 6, and 7 are procedurally defaulted. The Nevada Supreme Court affirmed the dismissal of these claims in Wright's second state postconviction petition. (Exh. 151.) In these four grounds Wright claims that his trial counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights. In ground 2 he claims counsel failed to object to (A) extensive

testimony about the co-defendant's statement implicating Wright; and (B) improper propensity evidence (ECF No. 38 at 17-23). In ground 4, Wright asserts that his counsel failed to ask the trial court to question a juror about possible bias and/or misconduct. (*Id.* at 27-28.)  In ground 6, Wright contends that counsel failed to move to suppress the search of the car based on unreliable information in the search warrant. (*Id.* at 30-32.) Ground 7 is a claim that trial counsel was ineffective during the plea bargaining process. (*Id.* at 32-35.)

Under Nevada law, the state district court shall dismiss a state postconviction petition filed more than one year after the judgment of conviction and shall dismiss any postconviction claim that could have been raised in a direct appeal or a prior postconviction petition. NRS § 34,726(1); 34.810. The Nevada Supreme Court explicitly relied on these procedural bars when it found Wright's second state postconviction petition to be untimely and successive and an abuse of the writ and declined to review the claims that correspond to federal grounds 2, 4, 6 and 7. (Exh. 151.) The Ninth Circuit Court of Appeals has held that, at least in non-capital cases, application of the procedural bar at issue in this case — NRS § 34.810 — is an independent and adequate state ground. *Vang v. Nevada*, 329 F.3d 1069, 1073-75 (9th Cir. 2003); *see also Bargas v. Burns*, 179 F.3d 1207, 1210-12 (9th Cir. 1999).

To overcome a procedural default, a petitioner must establish either (1) "cause for the default and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted). Cause to excuse a procedural default exists if a petitioner can demonstrate that some objective factor external to the defense impeded the petitioner's efforts to comply with the state procedural rule. *Coleman*, 501 U.S. at 753; *Carrier*, 477 U.S. at 488. The prejudice that is required as part of the showing of cause and prejudice to overcome a procedural default is "actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir.1998); *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir.1984). The state supreme court

4

pointed out that Wright had failed to allege any good cause or prejudice to overcome the procedural bars. (Exh. 151 at 2.)

Wright now argues that he can demonstrate cause because his state postconviction counsel was ineffective for failing to raise these grounds to the Nevada Supreme Court.  (ECF No. 64 at 16-25.)

The Supreme Court has established an equitable rule that ineffective assistance of counsel for failing to raise a claim of ineffective assistance of trial counsel in the state court initial-review collateral proceedings may serve as cause to overcome the state procedural bar. *Martinez v. Ryan*, 132 S.Ct. 1309, 1315, 1318-20 (2012). The Court in *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), further summarized what *Martinez* required in order to establish whether a federal court may excuse a state court procedural default. "Cause" to excuse the default may be found:

> [W]here (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino*, 133 S.Ct. at 1918 (quoting *Martinez*, 132 S.Ct. at 1318-19, 1320-21).

When the petitioner was represented by counsel during the initial-review collateral proceedings, he or she may demonstrate cause by showing that counsel in the initial-review collateral proceedings was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *Martinez*, 132 S.Ct. at 1318. The *Martinez* Court explained: "It is likely that most of the attorneys appointed by the courts are qualified to perform, and do perform, according to prevailing professional norms; and, where that is so, the States may enforce a procedural default in federal habeas proceedings." *Id.* at 1319. The Court emphasized that its ruling applied to initial-review collateral proceedings only and not to any other proceedings, including appeals from initial-review collateral proceedings. *Id.* at 1320.

///

**A.     Grounds 2, 4 and 6**

Wright raised the claims asserted in federal grounds 2, 4 and 6[2] in his proper person amended state postconviction petition and his counseled supplemental state petition. (Exh. 92, memorandum of points and authorities at 8-19 (grounds 2(A) and 2(B)); *id.* at 28-31 (ground 4); *id.* at 36-37 (ground 6); Exh. 94 at 5 (ground 2(B).)[3] This Court concluded that federal grounds 2, 4 and 6 were unexhausted because counsel for Wright failed to fairly present the corresponding state postconviction claims to the Nevada Supreme Court in the appeal of the denial of Wright's first state postconviction petition. (*See* Exh. 128.)

In *Martinez*, the Court explicitly restricted its ruling to initial-review collateral proceedings only: "The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . ." 132 S. Ct. 1320 ("It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . ."). Federal grounds 2, 4 and 6 were presented to the state district court in Wright's first state postconviction petition.[4] Accordingly, Wright's contention that his state postconviction counsel was ineffective for failing to raise the claims to the Nevada Supreme Court in the appeal of the state district court's denial of the first postconviction

*///*

---

[2]In ground 2 Wright claims counsel failed to object to (A) extensive testimony about the co-defendant's statement implicating Wright; and (B) improper propensity evidence. (ECF No. 38 at 17-23.) In ground 4, Wright asserts that his counsel failed to ask the trial court to question a juror about possible bias and/or misconduct. (*Id.* at 27-28.)  In ground 6, Wright contends that counsel failed to move to suppress the search of the car based on unreliable information in the search warrant. (*Id.* at 30-32.)

[3]When Wright returned to state court and filed a second postconviction petition, the state district court noted that the claims corresponding to federal grounds 2, 4 and 6 had been presented previously to that court in the first postconviction petition, and that it had ruled on each of the claims. (Exh. 148 at 2-4.)

[4]With respect to federal ground 6, the Court agrees with respondents that Wright also fails to demonstrate, under the *Martinez* framework set forth in the discussion of ground 7, that the ineffective assistance of counsel claim is "substantial" (ECF No. 65 at 9-10.)  The Nevada Supreme Court rejected on direct appeal the underlying substantive claim of federal ground 6 and concluded that the search warrant was valid despite the co-defendant's condition at the time of his statements. (Exh. 87 at 7-8.)

petition cannot serve as cause to overcome the procedural default of these claims. The Court therefore determines that federal grounds 2, 4 and 6 are procedurally barred from federal review.

### B.    Ground 7

Wright argues that under the *Martinez* framework he can demonstrate cause and prejudice to excuse the procedural default of ground 7.

Again, to allow application of the *Martinez* rule, a reviewing court must determine (1) whether the petitioner's attorney in the first collateral proceeding, if counsel was appointed, was ineffective under *Strickland*, 466 U.S. 668, (2) whether the petitioner's claim of ineffective assistance of trial counsel is "substantial," and (3) whether there is prejudice. *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir.2012) (citing *Martinez*, 132 S.Ct. at 1321). Thus, according to the process outlined by the Ninth Circuit, in order to overcome the procedural bar to an ineffective assistance of trial counsel claim using *Martinez*, petitioner

> must show that trial counsel was . . . ineffective, and that PCR [post conviction review] counsel's failure to raise trial counsel's ineffectiveness in the PCR proceeding fell below an objective standard of reasonableness. If trial counsel was not ineffective, then [the petitioner] would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR counsel "was not functioning as the 'counsel' guaranteed" by the Sixth Amendment.

*Sexton*, 679 F.3d at 1159 (quoting *Strickland*, 466 U.S. at 687). Where no counsel was appointed on postconviction review, cause is assumed and petitioner must demonstrate that his underlying ineffective assistance of trial counsel claim is substantial. *Martinez*, 132 S.Ct. at 1318-19. Applying this framework, petitioner argues that the procedural default of ground 7 — counsel failed to effectively advise Wright during plea negotiations (ECF No. 38 at 32-35) — may be saved by *Martinez* (ECF No. 64 at 23-25).

///

///

1.     **Cause**

Petitioner argues he is entitled to have this Court review the merits of his claim because counsel for his initial post-conviction proceedings was ineffective. He notes that Nevada law requires that claims of ineffective assistance of trial (and appellate) counsel be initially raised in such postconviction proceeding.

The Nevada Supreme Court has repeatedly held that claims alleging ineffective assistance of counsel, trial or appellate, may not be raised on direct appeal. *See Nika v. State*, 97 P.3d 1140, 1144-45 (Nev. 2004) (finding that the potential for a conflict of interest to arise if ineffective assistance of trial counsel were permitted on direct appeal makes such claims impractical); *Feazell v. State*, 906 P.2d 727, 729 (Nev. 1995)(claims of ineffective assistance of counsel must be raised at post-conviction). The only exception to this rule is if there has been an evidentiary hearing conducted by the trial court on allegations of ineffective counsel. *See Mazzan v. State*, 675 P.2d 409, 413 (Nev. 1984); *Feazell*, 906 P.2d at 729. Petitioner had counsel in his first postconviction proceedings, thus the first prong of *Martinez* inquires as to whether state postconviction counsel was ineffective for failing to raise the claim that trial counsel was constitutionally deficient during the plea bargain process. However, the Court concludes that the issue of prejudice — which turns on whether the underlying claim is "substantial" — is dispositive to its determination of cause and prejudice with respect to ground 7. Accordingly, the Court now considers prejudice.

2.     **Prejudice**

To determine whether petitioner suffered prejudice because his state postconviction counsel did not raise federal ground 7, this question must be answered— is the procedurally defaulted claim "substantial?" *Martinez*, 132 S.Ct. at 1321. The court in *Martinez* cited to *Miller-el v. Cockrell*, 537 U.S. 322 (2003) for its standard requiring the petitioner to make a substantial showing of the denial of a constitutional right, suggesting that this standard is appropriate in deciding if a claim would satisfy the prejudice prong for overcoming a procedural default. *Id.* at 1319. Under *Miller-el*, a

petitioner need not show that he will prevail on the merits. *Miller-el*, 537 U.S. at 337 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (a showing that "a court could resolve the issue [differently] or that the questions are adequate to deserve encouragement to proceed further" is sufficient to meet the substantial showing required for appellate review)); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Thus, this Court must determine if petitioner has made a substantial showing of the denial of a constitutional right in his postconviction proceedings on the allegation that trial counsel was ineffective during plea negotiations. (ECF No. 38 at 32-35.)

Specifically, Wright contends that sometime around October 14, 2005, he had indicated to his counsel that he wanted to accept a plea agreement. Instead, counsel appeared, without Wright, at a November 4, 2005, status hearing and informed the court that there had been a misunderstanding, there was no deal, and the case needed to be reset for trial. Wright asserts that his counsel, Kevin Van Ry, unreasonably advised him not to take the plea offer and that Van Ry failed to advise him that his criminal history subjected him to a possible habitual criminal count with a life sentence. He claims that, but for counsel's actions, he would have accepted the plea, would not have gone to trial, and would not have been sentenced to life without parole. *Id.*

In support of ground 7, Wright cites to his own November 2013 declaration. (Exh. 144.) In his declaration, Wright states that in the initial stages of the case, the State offered a plea agreement of two consecutive five to fifteen-year terms, which he did not accept at that time. He states that shortly after Van Ry was appointed, Van Ry spoke to Wright about the State's offer. Van Ry advised Wright to go to trial because the State's evidence against Wright was weak. Van Ry did not mention the possibility that Wright could be charged with a habitual criminal count. Van Ry did not consult with Wright prior to informing the court that plea negotiations were not going to be pursued and that he was going to ask for a trial date.

The state-court record reflects the following: Wright pled not guilty to both counts on June 18, 2004. (Exh. 5.) His co-defendant also pled not guilty that morning. (Exh. 135.) When the co-defendant entered his plea, the prosecutor noted: "There are no negotiations, Your Honor, he turned us down. Any deal would be a package deal [that is, both defendants would have to enter into guilty plea agreements], so there are no negotiations." (*Id.* at 2.)

On January 19, 2005, Wright filed a pro per motion for appointment of new counsel. (Exh. 15.) He complained that his counsel, Edward Horn, had failed to file several motions and that he had been prejudiced. (*Id.*) He attached as an exhibit a letter that he had sent to his counsel that stated: "Please file a pre-trial motion to preclude the State from introducing the Habitual Criminal Count from the amended information based on abuse of discretion, pursuant to NRS 207.010(4)."( *Id.* at 7.) Horn subsequently filed a motion to be relieved as attorney of record. (Exh. 17.)

The state district court held an *ex parte* hearing; Wright told the court that he had only met with Horn twice and both times Horn told him to take the plea deal offered by the State, which was allegedly for a term of five to fifteen years with a consecutive term of five to fifteen years for the deadly weapon enhancement. (Exh. 21.) Wright informed the court that he had told Horn: "I ain't taking no 30 years. I don't have that much time left of my years to even do 30 years of my life." (*Id.* at 13.) The state district court noted that some decisions were reserved for a defendant alone to make, including whether to accept a plea agreement and whether to go to trial. (*Id.* at 17.) The court granted the motion to withdraw and appointed new counsel. (*Id.* at 18-19.)

Kevin Van Ry was appointed to represent Wright. (*See, e.g.*, Exh. 22.)  Brad Van Ry appeared in lieu of his brother Kevin at a status conference on October 14, 2005. (Exh. 27.) Wright was present, and Brad Van Ry informed the court that his client was willing to enter into a guilty plea offered by the State. (*Id.* at 2.) The prosecutor was not prepared to proceed as he was not sure if a package deal was a contingency of the guilty plea. (*Id.*) The state district court continued the matter. (*Id.*)

Kevin Van Ry appeared at a November 4, 2005, hearing. (Exh. 28.) Wright was not present. Kevin Van Ry informed the court that the case needed to be reset for trial due to a misunderstanding when Brad Van Ry appeared on behalf of Wright and that there had not been a potential plea deal: "We had thought there were negotiations, but there's not." (*Id.* at 3.) Wright appeared with Kevin Van Ry at a hearing on January 13, 2006, to confirm trial. (Exh. 33.) Wright made no reference to any plea negotiations during that hearing. (*See id.*)

Van Ry testified at the evidentiary hearing for Wright's first state postconviction petition. (Exh. 109A at 48-50; Exh. 109B at 51-59.) He did not have many specific recollections about his representation of Wright (*see, e.g.*, Exh. 109B at 52: "I vaguely remember this case at all"). Van Ry did recall that Wright maintained his innocence throughout the proceedings. (Exh. 109B at 57.)

The Court concludes that Wright has failed to make a substantial showing of the denial of a constitutional right. He points to nothing, aside from his recent declaration, to support his contentions that Van Ry told him the plea agreement was still on the table and advised him not to accept the deal. Moreover, the record belies his assertion that he was unaware that he could be charged as a habitual criminal as Wright himself referenced that possibility in his letter to his previous counsel Horn.  Respondents point out that at the hearing at which Brad Van Ry represented Wright in place of his brother Kevin, it was not Gianna Verness who appeared, but another prosecutor. (ECF No. 65 at 10-11; Exh. 27.) It appears that Verness was the prosecutor assigned to Wright's case, as she appeared at most hearings and represented the State at trial. (*See* Exhs. 21, 22, 25, 26, 28, 33.) The fact that neither attorney who appeared was the attorney who usually appeared in the case gives rise to a strong inference that there was, in fact, simply a misunderstanding as to whether there were plea negotiations at that time. The Court notes that Wright filed several pro per motions in state court, including a January 4, 2006, motion to dismiss Van Ry as his counsel. (Exh. 30.) Yet, that motion made no mention of any plea agreement and did not allege that Van Ry had informed the court

that the case needed to be reset for trial against Wright's wishes. (*Id.*) Nor did Wright reference any such issues when he was present with Van Ry at the January 13, 2006, hearing to confirm trial. Wright cannot make a substantial showing of the denial of the right to effective assistance of counsel merely by pointing out that two consecutive terms of five to fifteen years is a more favorable sentence than life without parole.

Having carefully reviewed the parties' arguments and the record, the Court determines that Wright has failed to demonstrate cause and prejudice to overcome the procedural default of ground 7. Accordingly, ground 7 is procedurally barred from federal review.

Thus, respondents' motion to dismiss grounds 2, 4, 6 and 7 is granted as set forth in this order.

## IV.    CONCLUSION

It is therefore ordered that respondents' motion to dismiss (ECF No. 61), is granted. Grounds 2, 4, 6 and 7 are dismissed as procedurally barred.

It is further ordered that respondents will have forty-five (45) days to file an answer to the remaining grounds in the first-amended petition.

It is further ordered that petitioner will have thirty (30) days after the date of service of the answer in which to file the reply in support of the petition.

It is further ordered that petitioner's first and second motions for extension of time to file an opposition to the motion to dismiss (ECF Nos. 62 and 63) are both granted *nunc pro tunc*.

DATED THIS 20th day of September 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE