UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JAMES WRIGHT, JR., <br><br> Petitioner, <br><br> v. <br><br> ROBERT LEGRAND, *et al.*, <br><br> Respondents. | Case No. 3:12-cv-00286-MMD-VPC <br><br> ORDER |

Before the Court is state prisoner James Wright, Jr.'s first-amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 for final disposition on the merits of the remaining grounds. (ECF No. 38.)

**I.  PROCEDURAL HISTORY AND BACKGROUND**

This case arises from an incident in May 2004, when two men wearing hooded sweatshirts and bandanas covering their faces robbed a Pizza Baron restaurant in Reno, Nevada with a handgun. As this court set forth in its Order granting Respondents' motion to dismiss certain claims, on January 24, 2006, a jury convicted Wright of count 1: robbery and count 2: eluding a police officer. (ECF No. 19-17.) The state district court adjudicated Wright a habitual criminal and sentenced him to a term of life without the possibility of parole for count 1, with a concurrent term of twenty-eight to seventy-two months for count 2. (ECF No. 19-19.) Judgment of conviction was entered on March 3, 2006. (ECF No. 19-20.) Wright filed a notice of appeal. (ECF No. 19-21.)

On April 19, 2006, Wright filed a proper person state habeas petition but moved to voluntarily dismiss it without prejudice as premature. (ECF No. 15-3; ECF No. 16-8.) The

state district court denied Wright's motion and ordered the state habeas petition stayed pending resolution of his direct appeal. (ECF No. 16-10.) On July 10, 2008, the Nevada Supreme Court affirmed the convictions, and remittitur issued on August 5, 2008. (ECF No. 16-11; ECF No. 16-12.)

Wright filed a proper person amended state habeas petition on October 10, 2008, and a counseled supplemental petition on January 21, 2009. (ECF No. 16-16; ECF No. 16-17; ECF No. 16-19.) On April 17, 2009, the state district court issued an order dismissing several of the claims from the petition and ordering an evidentiary hearing on others. (ECF No. 17-2.) The court held the evidentiary hearing on March 3, 2010. (ECF No. 17-8; ECF No. 17-9; ECF No. 17-10.) On September 15, 2010, the court filed a written order adopting the April 17, 2009 order and denying the remaining grounds of the petition. (ECF No. 14-14.) The Nevada Supreme Court affirmed the denial of the petition on September 14, 2011, and remittitur issued on October 11, 2011. (ECF No. 18-8; ECF No. 18-10.)

On May 24, 2012, Wright dispatched his federal habeas petition for filing. (ECF No. 6.) Ultimately, this Court appointed counsel, and Respondents filed a motion to dismiss Wright's counseled first-amended petition. (ECF No. 40.) This Court granted in part and denied in part the motion and concluded that grounds 2, 4, 6 and 7 were unexhausted. (ECF No. 55.) The Court granted Wright's motion for stay and abeyance. (*Id.*)

Wright filed a second state habeas petition and raised the federal grounds 2, 4, 6 and 7. (ECF No. 58-1.) On April 14, 2015, the Nevada Supreme Court affirmed the dismissal of the petition as untimely pursuant to NRS § 34.726 as well as successive and an abuse of the writ pursuant to NRS §§ 34.810(1) and (2). (ECF No. 58-5.) The state supreme court held that Wright failed to demonstrate good cause or prejudice to overcome the procedural bars. (*Id.*) Remittitur issued on May 11, 2015. (ECF No. 58-6.)

This Court granted Wright's motion to reopen his federal habeas proceedings and granted Respondents' motion to dismiss grounds 2, 4, 6 and 7 as procedurally barred.

(ECF Nos. 60, 66.) Respondents have now answered the remaining grounds, and Wright replied. (ECF Nos. 68, 72.)

**II.     LEGAL STANDARD**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for this Court's consideration of the Petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts

a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

4

## III. THE INSTANT PETITION

### A. Ground I

Wright argues that the State's prosecutorial misconduct violated his Fifth, Sixth and Fourteenth Amendment rights when the prosecutor (1) failed to limit the use of the co-defendant's statement that implicated Wright; and (2) elicited prior bad act evidence. (ECF No. 38 at 11-16.)

In reviewing prosecutorial misconduct claims, the narrow issue the federal habeas court may consider is whether there was a violation of due process, not whether there was misconduct under the court's broad exercise of supervisorial power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). It is "not enough that the prosecutors' remarks were undesirable or even universally condemned, the relevant question is whether the prosecutors' comments so 'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (quoting *Darden*, 477 U.S. at 181). The ultimate question before the court is not whether misconduct denied a fair trial, but whether the state court's resolution of the claim was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). *Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999).

The state-court record reflects the following. Wright did not make any statements to police. His co-defendant Kevin Gill implicated himself and Wright in his statement to police. (*See* ECF No. 14-13.) Originally, the state district court granted Wright's motion to sever. (ECF No. 14-18.) However, the State moved for reconsideration, stating that the police detective who would testify about the statement was well aware of the problems that could arise if his testimony regarding Gill's statement were to implicate Wright. (ECF No. 14-21 at 7.) The deputy district attorney said: "the State has no problem limiting the question in any way that is satisfactory to the Court, that affords cross-examination and confrontation rights." (*Id.*) The state district court granted reconsideration: "on this condition, and that is that the counsel for State is instructed that counsel may not elicit during the State's case in chief any testimony from any source concerning any reference

5

by Mr. Gill directly or indirectly to any other party implicated in the charged offense, except only Mr. Gill." (*Id.*)

Michelle Robinson testified to the following at trial: Wright was driving her and Gill around in Wright's vehicle on the night in question looking for an open Taco Bell. (ECF No. 19-15 at 5-37.) Robinson was on her phone and did not really look around to see where they were when Wright pulled off onto some street near Keystone Avenue. Both Wright and Gill got out of the car and were gone for about ten minutes. When they drove away a police car pulled up and told them to put their hands out the window. Instead, Wright drove away; after a high-speed chase he ultimately stopped and both he and Gill fled the vehicle. Robinson acknowledged on cross examination that she has probably given law enforcement four or five different versions of the events. (*Id.*)

Police detective Jenkins testified as follows. (ECF No. 19-15 at 35-62; ECF No. 19-27 at 5-16.) Jenkins searched the white Cadillac that was involved in the incident. He found loose coin and coin wrappers on the back seat and several yellow pages from a local phone directory on the floor; a page that had been torn out bore a Pizza Baron restaurant advertisement. He discovered receipts and paperwork in the passenger compartment in the name of James Wright. In the trunk Jenkins found a bag with some dark-colored clothing, a blue bandana, a 40-caliber pistol, and dark-colored gloves. The afternoon after the crime was committed, Wright's wife contacted the police department to report the Cadillac stolen. When James Wright arrived at the police station to claim his vehicle he was arrested. Jenkins read Wright his *Miranda* warnings; Wright denied any involvement in the robbery. Wright provided Jenkins with written permission to search his house. Jenkins found a black nylon handgun holder between the mattress and box spring of the bed in the master bedroom.

Detective Steve Leer testified that the bills and coin found in and around the vehicle totaled $552. (ECF No. 19-14 at 51.) The owner of Pizza Baron testified that about $560 was missing from the register after the incident. (ECF No. 19-13 at 47.)

///

After the State finished its case-in-chief, Gill testified in his own defense. (ECF No. 19-27 at 25-53.) He testified that he was driving around Reno in the Cadillac with someone (whom he knew as DeShawn) driving and Michelle Robinson on the night of the incident. The three of them were smoking cocaine. He sold them some more cocaine and was counting the money when the police began to chase the car. When DeShawn pulled over, Gill fled with the money in his hand. (*Id.*)

On cross-examination, the State repeatedly asked Gill whether he had implicated Wright:

> Q: And isn't it true that you told Detective Jenkins that the other individual was Mr. Wright?
> A: No, it isn't.
> Q: That is not correct.
> A: No, it isn't.
> Q: Isn't it true that Detective Jenkins showed you a picture of Mr. Wright, and you identified him as the other individual?
> A: Detective Jenkins showed me a picture of other people, and he kept showing me pictures of Mr. Wright, you know, trying to make me say it was Mr. Wright. I didn't pick nobody out of that pictures.
> Q: You never told the detective that Mr. Wright was the other individual that went in and robbed the Pizza Baron with you?
> A: No, I didn't.
> Q: You never told the detective that Mr. Wright looked slightly different than he did in that picture?
> A: No, I didn't.
> Q: And in fact, did you tell the detective that you weren't the one armed with the gun because you don't like guns.
> A: I did not tell him that. I don't have guns.
> Q: Isn't it true you actually told the detective that it was Mr. Wright who was armed with the gun?
> A: No, I didn't.

(Exh. 39B at 53-54.)[1]

Wright's counsel asked Gill:

> Q: Who was Detective Jenkins focused on when he was interviewing you?
> A: Mr. Wright.

///

///

---

[1] While the Court received a courtesy paper copy of exhibit 39B, it appears that Respondents inadvertently omitted the exhibit from the electronic docket. Respondents must file exhibit 39B within fourteen days of the date of this Order.

|   |   |   |
|---|---|---|
| 1 | Q: | And you never specifically said Mr. Wright was involved in this robbery throughout all the questioning by Detective Jenkins, correct? |
| 2 | A: | Right. |

(*Id.* at 58.)

After Gill testified, the State re-called Detective Jenkins to the stand as a rebuttal witness. (*Id.* at 60-66.) Jenkins testified that he knew Wright by several monikers. He also stated that Gill told him that Wright was involved and that Gill said that that was what Mr. Wright always did, he did nothing but robberies. He testified that Gill never denied that Gill or Wright were involved in the robbery. (*Id.*)

When the State and defense counsel were settling jury instructions with the court, Wright's counsel indicated that he had decided not to propose an instruction regarding other crimes or other evidence of a crime. (*Id.* at 70.)

The Nevada Supreme Court rejected this claim:

> Wright argues that the prosecutor committed misconduct when she "promised the district court that there would only be one question posed to Detective Jenkins" about Gill's statement but then eventually extended her questioning. Wright's claim is without merit. First, the record does not reveal that the prosecutor ever made a promise about the evidence to be presented at trial. Rather, the record reflects that the district court, after reconsidering the motion to sever, decided that the defendants would be tried together and ruled that "counsel may not elicit during the State's case in chief any testimony from any source concerning any reference by Mr. Gill directly or indirectly to any other party implicated in the charged offense, except only Mr. Gill." It appears from the record that the understanding that Gill's implication of Wright would not be admissible applied only to the State's case in chief and was the result of a district court order, not a promise by the State. The prosecutor fully complied with the district court's order, and Gill's statement implicating Wright was not presented to the jury until the defense presented its case in chief. Therefore, we conclude that Wright's claim of prosecutorial misconduct is without merit.

(ECF No. 16-11 at 5-6.)

> Wright contends that it was either district court error or prosecutorial misconduct when Detective Jenkins testified that he knew Wright by several monikers and that Gill had told him Wright was a known robber. Wright describes this testimony as prior bad act evidence and complains that the failure to hold a pretrial hearing on the admissibility of the evidence constitutes reversible error. Specifically, Wright refers to Detective Jenkins' rebuttal testimony that he knew Wright by several monikers and had suspected Wright was one of the robbers at the beginning of the investigation. Detective Jenkins also testified that when he was interviewing Gill the morning after the robbery, Gill stated, "that was what Mr. Wright always did, he did nothing but robberies." Detective Jenkins' testimony that

8

> he knew Wright by several monikers was not evidence of prior bad acts. Nor was his testimony that he knew who Wright was and felt it was probable that Wright was involved in the robbery. On the other hand, Detective Jenkins' testimony that Gill had described Wright as someone who "did nothing but robberies" was evidence of prior bad acts. Because Wright did not object to admission of the evidence we review the record for plain error. "In conducting plain error review, we must examine whether there was 'error,' whether the error was 'plain' or clear, and whether the error affected the defendant's substantial rights. Additionally, the burden is on the defendant to show actual prejudice or a miscarriage of justice.
>
> "[I]nadvertent references to other criminal activity not solicited by the prosecution, which are blurted out by a witness, can be cured by the trial court's immediate admonishment to the jury to disregard the statement." *Sterling v. State*, 834 P.2d 400, 402 (Nev. 1992). Detective Jenkins' statement was a response to the question "what did codefendant Gill tell you about the robbery and who was involved." The prosecutor's question did not inquire about Wright's past criminal activity and was not intended to elicit the statement that resulted. After Detective Jenkins' testimony, the district court asked both defendants if they desired a jury instruction regarding evidence of other crimes. Wright's counsel stated that he had considered the matter and specifically declined to offer such an instruction. Wright's tactical decision not to remedy the error at trial precludes him from complaining that the error now requires reversal. Further, we conclude that the error does not rise to the level of plain error.

(*Id.* at 9-10.)

The State complied with the district court's order and did not introduce Gill's statement in its case-in-chief. Nevertheless, this Court views the State's questioning of Gill and of Jenkins when he was recalled as, at a minimum, improper gamesmanship. However, setting aside Jenkins's testimony inculpating Wright (and Gill's largely incredible testimony), significant eyewitness and circumstantial evidence of Wright's guilt was adduced at trial. This Court cannot conclude that the complained-of conduct by the State "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Tan*, 413 F.3d at 1112 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Wright has failed to show that the Nevada Supreme Court's decision on federal ground 1 is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 1 is denied.

///

## B. Ineffective Assistance of Counsel Claims

In grounds 3 and 5, Wright claims violations of his Sixth and Fourteenth Amendment rights to effective assistance of trial counsel. The two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable

application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Id.* at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105 (citations omitted). "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

### 1. Ground 3

In ground 3, Wright claims his attorney rendered ineffective assistance because he failed to investigate and present an alibi defense. (ECF No. 38 at 23-27.)

Wright's sister testified at the evidentiary hearing on his state postconviction petition. (ECF No. 17-8 at 6-25.) She stated that Wright came to her home in Fresno sometime in May 2004, to help her with her car, but she could not recall the dates. She said that her brother's trial counsel called her, and she told counsel she was willing to testify at trial. But counsel never called her again, and she never tried to call counsel.

Wright's mother also testified. (*Id.* at 25-48.) She stated that she called her daughter in Fresno when her son was there to help her daughter with a car and spoke to her son. She did not recall the dates that her son was in Fresno. She testified that James Wright's wife Michelle called her to tell her the police were at James and Michelle's house. Wright's mother testified that she thought Michelle had called the police to report that the car had been stolen. She could not recall the dates of any of these events.

Wright's trial counsel testified. (*Id.* at 48-51; ECF No. 17-9 at 1-10.) He testified that he only vaguely remembered Wright's case, but that he recalled Wright had told him that he was in Fresno at the time of the robbery. The best that counsel could recall was that Wright had given him a couple of phone numbers, which counsel called. He did not remember specifically talking to anyone. He stated that he definitely would have used an alibi in Wright's defense if he had been able to substantiate it. Counsel testified that Wright never admitted to committing the robbery.

Wright also testified at the evidentiary hearing. (ECF No. 17-9 at 11-52; ECF No. 17-10 at 1-7.) He stated that sometime after eight p.m. on the night of the robbery, his friend Brian picked him up and they drove from Reno to Fresno in Brian's truck, which took about six hours. Wright stopped at his sister's house and then spent the remainder of the night at a woman's house with whom he was romantically involved. He stated that he did not know Brian's or the woman's last name. Wright testified that he was not worried when his wife called him about his car because he had lent it to a friend named Deshan Parshay but had not told his wife. Wright spelled the first name for the court and said that he did not know how to spell the last name. He testified that, although he knew Parshay and his co-defendant Gill committed the robbery, he never told the police. He stated that

12

he never told his lawyer that he had stayed at his girlfriend's house in Fresno because he was married.

The Nevada Supreme Court concluded that Wright failed to demonstrate deficient performance or prejudice. (ECF No. 18-9 at 3.) The state supreme court noted that Wright's counsel testified that he discussed possible alibi witnesses with Wright and investigated those potential witnesses and stated:

> Appellant's mother and his sister testified at the evidentiary hearing that they believed appellant had been in Fresno, California, around the time that the robbery took place, but could not remember the exact date. The district court determined that appellant failed to provide credible testimony that he had an alibi during the incident and further concluded that appellant's testimony at the evidentiary hearing was not credible. Given the lack of evidence that appellant was not in Reno when the robbery occurred, appellant fails to demonstrate a reasonable probability of a different outcome had counsel investigated alibi witnesses further. Substantial evidence supports the district court's factual findings and we conclude that the district court did not err in denying this claim.

(*Id.*)

No plausible evidence of an alibi was presented at the state postconviction evidentiary hearing. Wright has failed to show that the Nevada Supreme Court's decision on federal ground 3 was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Ground 3 is, therefore, denied.

### 2. Ground 5

In ground 5, Wright asserts that his counsel was ineffective for failing to present any evidence to mitigate his sentence, such as that Wright supported his family and had been employed full-time for at least a year prior to the incident. (ECF No. 38 at 28-30.)

The presentence investigation report set forth Wright's four prior felony convictions, including a previous robbery with use of a firearm, for which he was sentenced to ten years with a like and consecutive term for the deadly weapon enhancement. (ECF No. 19-18.) The report also indicated that Wright and his wife had

///

four children and that he was employed full-time for the twelve months preceding the instant crime. (*Id.* at 10-11.)

At sentencing, Wright's counsel asked the court not to adjudicate Wright as a habitual criminal, arguing that Wright's criminal history was not that extensive and that even without a habitual criminal sentence he was facing a potential life sentence in any event. (ECF No. 19-19 at 7.) The State urged the court to find Wright a habitual criminal and pointed out that Wright committed this crime while on parole for armed robbery and that the factual scenarios were quite similar, including the high-speed chase. (*Id.* at 10-12.) When Wright addressed the court, he stated that he felt that he was "railroaded" by the State, the court, and his attorneys. (*Id.* at 13-14.) He said his attorney did not conduct an investigation or talk to witnesses, and Wright claimed that he only talked to his attorney one time, two days before trial, for an hour. (*Id.*) Wright's counsel then responded, telling the court that he had spent numerous hours investigating the case and trying to identify a defense. (*Id.* at 15.) The court, noting that "the evidence of guilt as to both defendants at trial was overwhelming," adjudicated both Wright and Gill as habitual criminals. (*Id.* at 16-17.)

Affirming the denial of this claim, the Nevada Supreme Court explained:

> Appellant fails to demonstrate that he was prejudiced. Appellant asserts that counsel should have presented evidence that appellant was a loving father and was employed until his arrest for this crime. Given appellant's lengthy criminal history, which included violent crimes, appellant fails to demonstrate a reasonable probability of a different outcome at the sentencing hearing had counsel presented testimony concerning his family life or employment history. Therefore, appellant fails to demonstrate that the district court erred in denying this claim without considering it at the evidentiary hearing.

(ECF No. 18-9 at 3-4.)

Wright argues that counsel should have presented evidence about Wright's family and employment, but that information was included in the presentence investigation report. Wright had four prior felony convictions, and he has failed to demonstrate that his counsel was deficient at sentencing or that he suffered prejudice. He thus has failed to show that the Nevada Supreme Court's decision on federal ground 5 was contrary to, or

14

involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 5 is denied.

The Petition, therefore, is denied in its entirety.

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Wright's petition, the Court finds that reasonable jurists may find its decision on ground 1 to be debatable pursuant to S*lack*. The court therefore grants a certificate of appealability with respect to ground 1 only.

## V. CONCLUSION

It is therefore ordered that the first-amended petition (ECF No. 38) is denied in its entirety.

It is further ordered that a certificate of appealability is granted as to ground 1 only.

///

///

15

It is further ordered that Respondents electronically file exhibit 39B within fourteen (14) days of the date of this Order.

It is further ordered that the Clerk enter judgment accordingly and close this case.

DATED THIS 24th day of May 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE